IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROBERT JOE LEAVITT and ) | Case No. 08-60861 |
| ) | |
| Debtors. ) | |
| ) | |
| AMERICAN GENERAL ) | Adversary No. 08-6042 |
| FINANCIAL SERVICES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT JOE LEAVITT, ) | |
| ) | |
| Defendant. ) | |

ORDER DIRECTING JUDGMENT IN FAVOR OF DEFENDANT

Plaintiff American General Financial Services seeks a judgment of nondischargeability of a debt owed to it by Debtor-Defendant Robert Joe Leavitt pursuant to 11 U.S.C. § 523(a)(2)(B), asserting that the Debtor provided it with a false financial statement as part of a loan transaction. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). Together with the announcements made at the conclusion of the trial,[1] the following constitutes my Findings of Fact and Conclusions

---

[1] With regard to the Debtor's representations of income on the Application for Loan when compared to the Debtor's actual income, the numbers discussed in this Order differ somewhat from the numbers announced at the conclusion of the trial. The difference is due to

of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On November 16, 2007, American General made a $3,500 loan to the Debtor. After making no payments against the loan, the Debtor and his wife filed a Chapter 7 bankruptcy petition on May 14, 2008, seeking to discharge the debt to American General, along with their other debts. American General seeks a determination that the debt to it is nondischargeable under § 523(a)(2)(B). That section excepts from discharge any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –
>
> * * *
>
> (B) use of a statement in writing –
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

---

my calculations based on further review of the paystubs post-trial. The findings made here as to the actual numbers modify those announced at trial. However, the result is the same.

      (iv) that the debtor caused to be made or published with intent to deceive . . . .[2]

The person objecting to the discharge of a debt must prove each and every element of the discharge exception by a preponderance of the evidence.[3]

 American General asserts that the Application for Loan which the Debtor submitted to acquire the loan contained materially false information about his financial condition. Specifically, the Application stated that the Debtor had income from two sources: Hemme Express LLC, where he represented that he had monthly gross income of $3,417 and net income of $2,598; and Carpet Direct, where he represented that he had monthly gross income of $6,667 and net income of $5,600. The combined net monthly income, therefore, was represented to be $8,198. Based on that income, the Debtor appeared to have $3,779 in funds available after making his mortgage and other installment payments, including the payment on the loan being made. American General asserts that the Debtor overstated his income, that he did so to induce American General to make the loan, that American General relied on the representations about the income when it made the loan, and that the Debtor intended to deceive American General by overstating the income.

 As to the second element of § 523(a)(2)(B), I find that the representation of

---

[2] 11 U.S.C. § 523(a)(2)(B).

[3] *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

income on the Application was a written statement regarding the Debtor's financial condition. However, I find that American General has not met its burden of proving each of the remaining elements of § 523(a)(2)(B).

First, American General failed to show that the Debtor's representations regarding his income were materially false. In order do so, the creditor must prove that the debtor's statement contained a "substantial or important untruth," not that the statement was incorrect or erroneous.[4]

On this issue, I find it significant that both of the Debtor's jobs were commission-based and, therefore, varied significantly from month to month. The paystubs submitted as evidence at trial showed that the Debtor received seven weekly paychecks from Hemme Express, ranging from $739.94 to $766.74, from the beginning of October 2007 until he applied for the American General loan on November 16. Using the first four weeks of October as a representative sample of his income during the period before he made the Application, and extrapolating that over a year, the Debtor's average monthly income from Hemme Express at the time was $3,235.44 per month. The Debtor reported on the Application that his gross income from this job was $3,417 and net was $2,598.

---

[4] *Waterbury Community Federal Credit Union v. Magnusson (In re Magnusson)*, 14 B.R. 662, 668 (Bankr. N.D. N.Y. 1981) (citation omitted).

Carpet Direct pays the Debtor twice a month. In October 2007, he received a check for $2,509.68 on the 15th and a check for $2,579.96 on the 30th, for a total income of $5,089.64 for that month. The Debtor reported on the Application that he grossed $6,667 and netted $5,600 in monthly income from Carpet Direct.

While the Debtor did overstate his income when compared to the October paystubs, particularly as to the Carpet Direct income, it is not clear from the evidence whether the income was overstated generally, nor was it clear whether any overstatement was an "untruth," as opposed to an error on the Debtor's part. I again emphasize that the Debtor's income from both jobs was commission-based and varied significantly from month to month. American General's witness testified that, although it would customarily verify the Debtor's income through paystubs, the witness was not personally involved in this loan transaction and could not testify with certainty as to what evidence of income the Debtor provided. Further, there may have been some confusion as to "net" versus "gross" amounts. The paystubs from both employers reflect that no taxes were taken out of the Debtor's pay and that the paycheck amounts could, therefore, be viewed as "gross" pay. From that view, the Debtor overstated his income as to both employers. On the other hand, one might view the actual paycheck amount as a "net" amount, since the employee would typically pay the income taxes later (*i.e.,* quarterly or with the annual income tax

5

return) and thus not factor taxes into the periodic "net" income figure. From that point of view, while the Debtor still overstated his income from Carpet Direct, he understated his income from Hemme.

In sum, although it is a close call on this element of § 523(a)(2)(B), I do not find that the Debtor's representations were materially false, in view of the fact that the Debtor's income was commission-based, and that there may have been some confusion as to "net" and "gross" amounts.

Moreover, a materially false statement is a "statement that paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally [a]ffect the decision to grant credit."[5] The test of material falsity is whether the lender would have made the loan had he known the debtor's true financial condition.[6] Although information as to an applicant's income would normally affect the decision to extend credit, the evidence was that that was not the determinative factor in this instance. This also relates to the element of reliance.

Specifically, the evidence was that American General had made several prior loans to the Debtor, all of which the Debtor had paid in full. Among the prior loans,

---

[5] *European American Bank v. Launzel-Pennes (In re Launzel-Pennes),* 191 B.R. 6, 12 (Bankr. E.D. N.Y. 1996) (citations omitted).

[6] *In re Bogstad,* 779 F.2d 370, 375 (7th Cir. 1985); *See also Chrysler Credit Corp v. Ruwart (In re Ruwart),* 114 B.R. 725, 729 (D. Colo. 1990).

American General made loans to the Debtor on October 17, 2006 and April 12, 2007. In connection with the October 2006 loan, American General had determined that the Debtor's bankruptcy risk was "medium," but by the time it made the April 2007 loan, the Debtor's bankruptcy risk had deteriorated to a "high" risk. The loan documents reflect that American General still considered the Debtor to have a "high" bankruptcy risk when it made the loan at issue here. The loan officer's notes in the file on the April 2007 loan also reflect that the Debtor had "a lot of debt," "[b]ut always paid well." Similarly, the notes on the Application for the loan at issue here acknowledged that the Debtor had "a ton of rev[olving] debt." The notes further said that, although the Debtor had a lot of revolving debt, he should be approved for the loan because the loan officer was "familiar with the customer and his pay history" and that he "always paid account excellent." As stated above, the Debtor had paid all prior loans in full and paid off both the October 2006 and April 2007 loans in August 2007 by making payments with a combined total of nearly $10,000. In other words, the evidence showed that American General did not make this loan based on the Debtor's income or other financial condition, but on his prior history with American General. In essence, American General knew for some time that the Debtor was juggling debt, and that his bankruptcy risk had deteriorated from "medium" to "high," but made the loan based on the fact that he always found a way to pay American General loans.

Finally, I find that the Debtor did not intend to deceive American General. At the time he made the Application, the Debtor had two jobs and good income. His ultimate inability to repay the American General debt (and the filing of the bankruptcy case) was that he had a significant drop in income as a result of his losing his job with Hemme Express and a sharp decline in his sales and resulting commissions from Carpet Direct due to the slowing economy. His wife also had to take a significantly lower-paying job due to health problems in December 2007. There was no evidence to suggest that the Debtor knew that any such adverse events were going to happen when he applied for the November 2007 loan.

American General points out that the Debtor first consulted with his bankruptcy attorney on the very same day he applied for the loan. One certainly could view this as evidence that the Debtor did not intend to repay the loan when he applied for it. However, the Debtor testified that he saw the attorney that day because, like American General, he knew that he had a lot of revolving debt and wanted to understand what his options might be. He testified that he did not intend to file bankruptcy at that time, and I found his testimony to be credible. Indeed, he did not file for bankruptcy protection until six months later in May 2008, which was after he and his wife suffered a significant loss of income and creditors were foreclosing and repossessing assets.

In sum, I find that American General did not meet its burden of proving, by a preponderance of the evidence, that the Debtor made a materially false statement regarding his income, that American General reasonably relied on that false statement, or that the Debtor intended to deceive American General.

ACCORDINGLY, the Clerk of Court is ORDERED to enter judgment in favor of the Debtor-Defendant, Robert Joe Leavitt.  Each party to bear its own costs.

IT IS SO ORDERED.

        /s/ Arthur B. Federman
        Bankruptcy Judge

Date: 10/21/2008

Copy to: Connie Montgomery
       Gerard A. Nieters